Jermann vs. Tenneas et als.

## No. 9938.

MRS. JOSEPHINE JERMANN VS. MRS. MARY TENNEAS ET ALS.

When a man contracts a second marriage whilst his first wife is living and undivorced, and dies leaving property acquired during the second marriage, if the second wife married in good faith, the estate will be shared equally by the two wives.

Where after the death of the husband the widow of the second marriage recovers an immovable, which had been acquired during her marriage, but from which the husband had been illegally evicted before his death, the property, together with its fruits and revenues recovered at the same time, will belong to the second community and be subject to be equally divided between the two widows.

The widow of the second marriage is only accountable for the revenues of the property in her possession received by her after the dissolution of the marriage from judicial demand. She is a possessor in good faith.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*J. O. Nixon, Jr.*, for Plaintiff and Appellee.

*Braughn, Buck, Dinkelspiel and Hart*, for Defendants and Appellants.

The opinion of the Court was delivered by
TODD, J.  The petition alleges in substance:

That Francis Jermann, alias Germaine, contracted marriage with the plaintiff, Josephine Atlinger, in Germany in 1851, and that there was born of the marriage one child, Josephine Jermann, who joins in the suit.

That shortly after the birth of the child, the said Francis emigrated to the United States, leaving his wife and child in Germany.

That after his arrival in this country he contracted a second marriage in the city of New Orleans with one Mary Tenneas, of which marriage there were eight children born, who are named in the petition, and with their mother are made defendants in the suit.

That Francis Jermann died, in this city, on the 2d June, 1873, leaving an estate, consisting mainly of certain city lots and buildings described in the petition, which were acquired during the existence of the second marriage.

That this property, though inventoried as belonging to the succession of said Jermann, had been sold at sheriff's sale prior to his death, but that in a suit brought after his death by the widow of his second marriage, the sheriff's sale had been annulled and the property restored to the succession, and rents of the same recovered to the amount of $7311.

This immovable property, the money thus recovered for the rents of the same, and the revenues thereof since it came into the possession of

the defendant Mary Tenneas, widow of the second marriage, are asked to be community property between the deceased Francis Jermann and the defendant and Mary Tenneas, his second wife, but one-half of it is claimed to belong to the plaintiff, Mrs. Josephine Jermann, the first wife.

There is no money judgment prayed for against the children of the second marriage.

To this petition there was an exception of "no cause of action" filed.

Upon this exception judgment was rendered as follows (quoting):

"It is ordered that the exception　＊　＊　＊　in so far as concerns the money demand against the heirs be maintained, and as to the widow, Mrs. Mary Germaine, as far as same concerns rents and revenues up to judicial demand be also maintained, otherwise overruled.

From this judgment the plaintiffs have appealed.

The appellants do not complain of the judgment so far as it relieves the heirs of a demand for a money judgment, or of any liability for money received by their mother from any source.

There is, however, some obscurity in the language of the judgment, but we construe it to mean and hold that the defendant, Mary Tenneas, widow, is not liable for the revenues of the property since she recovered possession of it, after annulling the sheriff's sale, prior to judicial demand. Thus leaving intact the demand for the recovery of one-half of the immovable property and one-half of the money recovered from the rents of the same by the defendant under the judgment against the party holding under the sheriff's sale.

The theory of the plaintiff's suit is that the community growing out of the second marriage of Jermann is composed:

1. Of the immovable described.

2. Of the rents recovered for it whilst it was out of the possession of the defendant.

3. The revenues of the property after possession was recovered by the defendant and before judicial demand.

4. The revenues after judicial demand.

As we construe it, the judgment maintained the suits in all the above items save the third—i. e., as to the revenues of the property received before the institution of the suit.

A reasonable construction of the language of the judgment can admit of no other conclusion.

The second item above embraces only money collected for the second community—on account of revenues it is true—but not of revenues received from the property by the widow whilst in her possession, but for revenues enjoyed by another whilst the possession of the property was illegally withheld from her and she was seeking to recover it.

The property itself was not in the posse sion of Jermann at the time of his death.  It had been sold at sheriff's sale.  It was afterward recovered by the widow, and with the property was recovered also its fruits during the time it was held by the purchaser under the illegal sale.  Both parties admit that the property its lf belongs to the community, notwithstanding it was not in possession of the community when it was dissolved by the death of Jermann, and we cannot perceive why the fruits of that property,when recovered, did not have the same status as to ownership or title as the property itself.

The only question, therefore, really presented for our solution is, whether there was any liability shown by the petition against the defendant widow of the second marriage for the revenues of the property received by her before the institution of this suit whilst in her possession.

It is not charged in the petition that the marriage with Jermann was contracted by her in bad faith; on the contrary, taking the allegation and prayer of the petition as a whole, it is fairly deducible that it is admitted that she entered into marriage in good faith, in entire ignorance of the previous marriage of her husband and of his having another living wife.

Being thus in good faith as to the marriage, she had a right to believe, and did believe, that she was the owner of one-half of the property acquired during her marriage and the usufructuary, as widow in community, of the other half and thus legally entitled to receive its fruits and revenues.  In other words, that she was strictly a possessor in good faith, and she so remained until informed by this suit of the prior marriage of her husband of the existence of his first wife.

The counsel for plaintiff contend that the question of possession in good faith, and the rights incident thereto, has no application under the circumstances of this case, but only applies to petitory or possessory actions, but we cannot concur in this view.  It is of wider scope and significance.

It is in truth the broad principle of equity, of universal application, that a person in possession of an immovable under a just title rightfully and legally entitled to believe he is the owner of the premises,

cannot justly be condemned to pay its revenues to another before the same are demanded of him, and his right to receive them is questioned.

We are supported in this conclusion by the decision in the case of Hubbel vs. Inkstein (7 Ann. 252), where the question was directly presented. It is true that in that case the party sued had been put into possession of the property by an order of court as widow and usufructuary; but that circumstance does not effect the principle underlying both cases.

With the construction placed on the judgment appealed from as above stated, we find no error in it, and it is therefore affirmed with costs.