SOMMERVILLE, J.
Plaintiff, in her capacity as natural tutrix of the minor Stanislaus John Arthur Waterhouse, alleged that he is the sole heir of his father, John Edward Waterhouse, who in turn had inherited from his father, John Arthur Waterhouse, a share and interest in the defendant company, which was owned by John Arthur Wa-< terhouse at. the time of his death, and, in addition thereto, that the said John Edward Waterhouse was the owner of ten shares of stock, of the par value of $100 each, of the capital stock of the defendant company. She charges that Mrs. Mary A. Waterhouse, the widow of John Arthur Waterhouse, and their son, James C. Waterhouse, usurped and assumed, without election or appointment, the positions of president and secretary-treasurer, respectively, and members of the board of directors of the said company, and that they have done certain things set forth in the petition which were illegal and fraudulent, with the view to defraud the corporation and minority stockholders thereof; further, that said officers and directors have jeopardized and are jeopardizing the rights of the minority stockholders, and that they are grossly mismanaging the business of the said corporation, and committing acts ultra vires, and are wasting, misusing, and misap *180 plying the property and funds of the corporation. And she prays that the defendant company, together with Mrs. Mary A. Water-house, its president, James G. Waterhouse, the secretary-treasurer, and these same persons as acting members of the board of directors of said corporation, he cited, and for judgment against said persons for the value of the property of the corporation which has been disposed of' by them, and that they be. dismissed from the offices occupied by them. And she further asks that the defendant corporation show cause why a receiver should not be appointed for it, and that a receiver be appointed thereto.
The three defendants made separate appearances, and for cause why a receiver should not be appointed excepted:
“That the late John E. Waterhouse at the time of death owned no stock whatsoever in the Star Land Company, Limited, defendant herein.
“That at the time of the marriage between John A. Waterhouse, deceased, and exceptor (Mrs. Mary Waterhouse), said John A. Water-house, deceased, had no property whatsoever; that all of the property owned by the said John A. Waterhouse, deceased, and in his possession, or in the possession of others for him, at the time of his death, was acquired subsequent to the marriage between exceptor and said John A. Waterhouse, deceased; that at the-time of the marriage of the said John A. Waterhouse, deceased, to exceptor, he had a wife to whom he was legally married living; that at the time of said marriage exceptor was ignorant of said previous marriage of said John A. Waterhouse, deceased, and remained ignorant of said marriage up to the time of his death; that all of the property acquired by the said John A. Waterhouse, deceased, after his said marriage to said exceptor belonged to his two wives, and at the time of his death he owned no property whatsoever.
“That for the reasons set forth the said minor, Stanislaus John Arthur Waterhouse, is without any interest whatsoever in the capital of the stock of the Star Land Company, Limited, ánd is not a creditor of the Star Land Company, Limited, and is absolutely without interest to prosecute this suit and stand in judgment herein.”
[1] Tw.o days after filing the exceptions by the several defendants, all of which were to the same effect, the defendants answered severally, after reserving all of their rights under their exceptions, and without in any wise abandoning the same, but insisting thereon, denying the allegations of plaintiff’s petition. The defendants were ordered to show cause April 19, 1915, why a receiver should not be appointed to take charge of the affairs of the corporation. The record fails to show what was done on that day; but April 28, 1915, the minutes show that the exceptions to the petition and the rule to appoint a receiver were taken up, heard, and submitted. On that day the,trial judge ruled:
. “The court will hear evidence upon the exceptions, and, if it .finds that the plaintiff, John E. Waterhouse, has an interest, either as a stockholder or an heir, will then go on and try the balance of the case; of course, if he has no interest, that is the end of the case.
“To_ which ruling of the court counsel for plaintiff reserves a bill of exceptions.”
[2] The bill is without merit. If plaintiff had no pecuniary interest in the defendant company, it would have been idle on the part of the court to have heard testimony on the merits of the cause.
A similar point was presented in the case of Quaker Realty Co. v. Labasse, 131 La. 996, 60 South. 661, Ann. Cas. 1914A, 1073. It was there held that a defendant had no standing to provoke judicial inquiry into a matter in which he had no pecuniary interest, saying:
“Manifestly he has not, if he has no pecuniary interest in the matter. The principle that one without pecuniary interest has no judicial standing runs all through our jurisprudence; it is founded upon simple, plain, common sense; it is formulated in article 15 of the Code of Practice, reading, ‘An action can only be brought by one having a real and actual interest which he pursues;’ and it has been enforced by this court in a very large number of cases, and among others in cases where parties whose title had been divested by a tax sale were still seeking to litigate with reference to the property.”
On her brief plaintiff complains that she was prevented from offering evidence by the ruling of the court on the trial of these exceptions; but this is clearly not the case, for the record shows that evidence was offered by the plaintiff, and the trial of the ex *182 •ceptions was closed with the remark, by counsel:
“That is all I have to offer on this matter now.”
It does not appear that plaintiff alleged •surprise on going to trial on the exceptions, or that a continuance was asked for, or that he asked for time to produce further testimony. The issue had been tendered some time in advance of the calling of the case for trial, and both parties had announced themselves • ready for trial. If plaintiff had evidence which might have been successfully opposed to the evidence offered by the defendant on the trial of the exceptions, such evidence was then in court, or should have been there, if she expected to go to trial on the merits of the cause.
The ruling of the court was correct.
As to the ten shares of stock claimed by plaintiff to have been owned by her deceased husband, John Edward Waterhouse, the evidence is positive that the said John Edward Waterhouse sold said shares of stock to his mother in the year 1912, and that she paid him $500 for the same. The evidence of the defendant Mrs. Waterhouse to such effect -is corroborated by her son, the other defendant, James E. Waterhouse; and it is further corroborated by the possession of the certificate of stock for the ten shares by the defendant Mrs. Mary A. Waterhouse.
As to that portion of the stock which had been owned by the grandfather, John A. Waterhouse, and said to have been inherited in part by his grandson, the minor ward of plaintiff, the evidence shows that all the property which John A. Waterhouse possessed was acquired during his marriage with his second wife, Mrs. Mary A. Water-house. The evidence further shows that at the time of his said marriage Mr. Water-house was already married to Mrs. Emma Whitefield, who lived in the. Isle of Utila, and that the second Mrs. Waterhouse was ignorant of the fact of the existence of said marriage at the time of her marriage to Mr. Waterhouse, and remained in ignorance thereof until after his death in 1912. There was a son bom of the first marriage, and two sons were bom of the second marriage. The first marriage was proved by the certificate of marriage of the parties, duly authenticated, and also a certificate of the birth of the son of said marriage. The marriage was also testified to by a citizen of New Orleans who knew the parties.
[3] The second marriage having been entered into in good faith on the part of the second wife, the law declares it a putative marriage; and to the wife and children of the second marriage is given the standing and the rights of a lawful wife and of lawful offspring.
The articles of the Civil Code relative to putative marriages are as follows:
“Art. 117. The marriage which has been declared null produces nevertheless its civil effects as it relates to the parties and their children, if it has-been contracted in good faith.
“Art. 118. If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor and in favor of the children born from the marriage.”
Interpreting these articles, we hold in Clendenning v. Clendenning, 3 Mart. (N. S.) 438:
“A woman who was deceived by a man, who represented himself as single, and his children begot while the deception lasted, are bona fide wife and children, and, as such, entitled to all the rights of a legitimate wife and issue.”
In the case of Patton v. Cities of Philadelphia and New Orleans, 1 Ha. Ann. 98, we hold:
“We agree with the plaintiffs’ counsel that the second wife and the children conceived during her good faith have all the rights which a lawful marriage gives. We concur on that subject, in the opinion of the late Supreme Court in the case of Clendenning, already cited. It is because Eleonore Hook had all the rights of a lawful wife that the plaintiffs have no title or claim to lands acquired by their father during the existence of the two marriages. The plaintiffs have taken it for granted that there could not be two communities. This is an error. The laws of Spain recognize in such cases two entire communities. As the wife, under those *184 laws, forfeits her share of the acquets and gains when she is guilty of adultery, so the husband forfeits his share when he has two wives living, and each of the wives takes the undivided half to which the law would entitle her if she was alone. Paz, in his sixty-first Consulta, class 9, states the law as follows, in a case identically the same as the present:
“ ‘Out of the acquets and gains the debts must be paid, because what the parties owe during the marriage cannot form a part of the acquets and gains, and belongs to the creditors. The balance, after paying the debts, must be divided between the two wives, without any portion of it going to the succession of the husband. * * * Lib. 5, Nueva Recopilación, tit. 9, 1, 1-6. And although the second law of this title requires the cohabitation of the wife with the husband, in order that she be entitled to her share, yet, as the marital cohabitation has not failed through her fault, but, on the contrary, through the fault of her husband, who abandoned her, she is not to lose her rights on account of the fault and misconduct of her husband. Imputari non debet ei per quern non stat, si non faciat quod per eum fuerat faciendum. Di Reg. Jur. 6, reg. 41.
“ ‘To the second wife the other half is due, because, by virtue of her good faith at the time of her marriage, she is reputed a lawful wife, for the same reason for which the law recognizes her issue as legitimate. This is affirmed by Covarruvias in Epit. p. 2, cap. 7, sect. 1, No. 7, Antonio Gomez, 1. 50 de Toro No. 77, and Molina de Just, tract. 2 disp. 433, who all agree that it is the common opinion of the doctors of the law that a woman marrying in good faith, although the marriage may be null, is entitled to one-half of the acquSts and gains. From which it results that one-half goes to each of the wives, and that the husband deceiving the second and doing a grievous wrong to the first refuses unjustly to either the share which belongs to her, and that he is bound to satisfy both out of everything he possesses, because the law favors those who are deceived against those who deceive them. Oum deceptis et non decipientibus jura subveniunt. In taking from the father’s succession those acquSts and gains, no wrong is done to the inheritance or the legitimate portion of his children, because this is a just debt which he owes to his two wives, and the thing which the father owes is not inherited by his children, but taken by his creditors, as their own.’
“Paz, Consultas Varias, pp. 483, 484.
“The lands claimed in this suit formed part of the acquets and gains, and at the death of Morehouse the title to them vested in his two wives, each for one undivided half, to the exclusion of the plaintiffs. If, therefore, they have now any right to exercise upon these lands, it must be derived from the declaration of Eleonore Hook, made before the parish judge of the parish of Ouachita on the 19th of September, 1813.”
To the same effect is the finding in the case of Hubbell v. Inkstein, 7 La. Ann. 252:
“In the case of Patton v. Cities of Philadelphia and New Orleans [1 La. Ann. 98], in many respects similar to the present, we held that under the former laws of the country, where a man married two wives, and the second wife was in good faith at the death of the husband, each took one-half of the community property. Hubbell died after the repeal of those laws. But the principle upon which they rested appears to us clearly deducible from those now in force; and the reasons of the law, as stated in Patton’s Case, have equal force under both systems. The wife is now, as under the Spanish laws, entitled at the dissolution of the marriage to oner half of whatever may remain after paying the community debts. This claim may be assimilated to a debt from the succession of the husband to the wife, and, as such, it excludes the right of inheritance of the children. 1 La. Ann. 98.”
Again, in the case of Abston v. Abston, 15 La. Ann. 137, it is stated in the syllabus:
“Where a man married a second time, while his first marriage was undissolved, and the second wife in contracting the marriage acted in good faith, held that at his death the lawful wife and the wife de facto will be each entitled to one-half of the community, and the children born of each marriage entitled as legitimate children and heirs at law to succeed to the separate property of their deceased father in equal parts as if they had been born of the same marriage.”
The same rulings were made in the Succession of Navarro, 24 La. Ann. 298, and in Jermann v. Tenneas, 39 La. Ann. 1021, 3 South. 229.
It is a fixed rule of property in the state of Louisiana that property which has been earned during the existence of a putative marriage belongs one half to the legal wife and the other half to the reputed wife. The children of the respective marriages have therefore no interest in it. Therefore Stanislaus John Arthur Waterhouse, minor, has no interest in the stock owned by his grandfather, John A. Waterhouse, in the defendant corporation; as such stock was acquired by John A. Waterhouse during the existence of the second community, and it must be divided between his two wives.
The exceptions filed by the defendants of want of interest on the part of the minor *186 Stanislaus John Arthur Waterhouse were properly sustained.
Judgment affirmed.
See dissenting opinion of O’NIELL, J., 71 South. 360.