**FULTON BAG & COTTON MILLS v. FERNANDEZ et al. ***

No. 16037.

Court of Appeal of Louisiana. Orleans.

Feb. 18, 1935.

*Rehearing denied March 18, 1935.

Lemle, Moreno & Lemle, of New Orleans, for Fulton Bag & Cotton Mills.

Porteóus, Johnson & Humphrey, of New Orleans, for Elsie Badelle Fernandez.

Lester Pailet, of New Orleans, for Hannah Anderson.

JANVIER, Judge.

This is a contest between two women, each seeking recognition as the "dependent widow" of the deceased employee.

In the course of his employment and in an accident which arose therefrom, a negro employee, sometimes known as Irvin and sometimes as Alvin Fernandez, was killed.

Two women presented claims for compensation, which, under the provisions of Act No. 20 of 1914, as amended, is due to the widow who, previous to her husband's death, has been dependent upon him for support.

The employer, Fulton Bag & Cotton Mills, conceding liability to the proper legal dependent under the statute and proceeding under the provisions of Act No. 123 of 1922, deposited in the registry of the civil district court the weekly compensation payments which had accrued, asserted its willingness to make future payments to the proper legal claimant, and cited the two women to appear and assert their respective rights.

Both claimants concede that $3.12 per week, the amount the employer admits is due, is correct, and the controversy arises solely from the rival claims of the two so-called dependent widows.

Elsie Badelle Fernandez claims to have been the legal wife of the deceased employee, and maintains that, until the time of his death, she was living with him within the contemplation of the statute, and that, therefore, she is conclusively presumed to have been dependent upon him, and she asserts her right to the full amount of each weekly payment.

The other woman, Hannah Anderson, in her pleadings avers that she is "the true and legal widow" of the deceased employee and she, too, seeks judgment for the full amount of compensation for which the employer admits that it is liable.

There are certain facts which are either conceded, or are so abundantly proven as to warrant acceptance as correct beyond question:

Elsie Badelle and the deceased were legally married in St. John the Baptist parish in 1927 and were never divorced or legally separated; Hannah Anderson and the deceased were the principals in a marriage ceremony performed in New Orleans in 1934, a few months prior to the accident; a license was obtained for the marriage with Hannah Anderson, and, in all respects, that marriage was legal except for the insurmountable obstacle of the pre-existing marriage with the other woman; neither of the women knew of the existence of the other, nor, until after his death, of any other ceremony than her own, in which Fernandez had taken part as a principal.

The conclusion which follows from these facts is that on the day on which he met his death, Fernandez was the legal husband of Elsie Badelle and that Hannah Anderson was his putative wife and, as such, was entitled to all the civil rights of a putative wife, since, being in ignorance of the former marriage, she was in good faith when she married Fernandez and remained in good faith until the time of his death. Civ. Code, arts. 117, 118.

The district judge concluded from the evidence that the legal wife, Elsie Badelle, had not been living with her husband and was not dependent upon him at the time of his death, and held that she was not entitled to any part of the award, and further held that,

since there was no dependent legal wife, the putative wife should receive the full amount. Judgment was rendered accordingly.

Elsie Badelle Fernandez, the legal wife, has appealed, and the employer, Fulton Bag & Cotton Mills, has also appealed for the reason that, in the event there should be a reversal of the judgment as between the two contending "widows," there would then be a judgment in favor of the legal wife, and, were there no appeal on the part of the employer, the judgment in favor of Hannah Anderson and against the employer having become executory, there would be two judgments against the employer, one in favor of each of the claimants.

We first consider the status and the rights of the legal wife.

The evidence produced on her behalf shows that after the marriage in the parish of St. John the Baptist, she and Fernandez lived together until he determined to go to the city of New Orleans to seek employment. Some of the witnesses fix the time of his departure for New Orleans at four or five years after the marriage, but Elsie, herself, says in one part of her testimony that it was two or three months thereafter, and this testimony of Elsie is pointed to by her rival claimant as indicating that there was a physical separation almost immediately after the marriage between Fernandez and his legal wife. But the testimony of Elsie Badelle, when read as a whole, shows plainly that she must have misunderstood the question asked her, and that, when she referred to a period of two or three months, she had in mind not the period during which Fernandez remained in the parish of St. John the Baptist after the marriage, but the period immediately preceding his death, during which time he did not return to visit her. The evidence shows that for approximately two and one-half months next preceding his death Fernandez did not make any further visits to the parish of St. John the Baptist.

There is a preponderance of evidence to the effect that after Fernandez had taken up his residence in New Orleans, where he had found employment, he continued regularly to visit his wife, Elsie, in the nearby parish and to cohabit with her and to contribute substantially to her support. There is evidence to the effect that these visits were as frequent as once each week or two, and that they continued until about two and one-half months before the fatal accident. The last visit seems to have been made at about the time at which the second, or bigamous, marriage was contracted with the other claimant Hannah Anderson.

There is, however, testimony by which the putative wife seeks to show that the visits of Fernandez to his legal wife had been discontinued many months prior to his death and that for a very long time he had not contributed to her support.

An attempt is made to prove also that the legal wife was supporting herself entirely by her own labors, and there is evidence tendered to show that she had so far forgotten her moral and conjugal obligations as to commit adultery with various other men.

■ This evidence, however, falls so far short of being convincing that we feel justified in stating that it is patently unworthy of belief. It consists of statements of witnesses who knew Fernandez in New Orleans and who stated that he could not have paid regular visits to his wife in the country parish during many months preceding his death because of the fact that the said witnesses claimed to have seen him here in New Orleans during all that time. In view of the fact that the legal wife concedes that most of his time was spent in New Orleans and that he only visited her overnight or for very short periods, such evidence as that to which we have just referred, even if true, is negative in character and must yield to the positive evidence given by witnesses who actually saw Fernandez on his many visits to his wife at her home in the parish of St. John the Baptist.

■ The fact that he did not return to her during the two and one-half months next preceding his death should not, under the circumstances, deprive Elsie of her rights as his dependent widow. Had she affirmatively acquiesced in his continued absence during this time and in his failure to contribute to her support, the case against her might have been made out. But, in so short a time as two and one-half months, there was no legal duty in her, in order to retain her status, to demand his return, or to do more than to patiently wait, since, so far as she knew, he was devoting himself to earning money for her support, and, so far as she could tell, he may have been prevented by his labors, or by economic necessity, from making his regular trips. At any rate, we think it would be dangerous to hold that, merely because a wife has allowed two and one-half months to elapse after the departure of her husband, without taking legal steps to compel him to return, she should lose her legal rights as his dependent wife or widow.

The case, on this feature, is not similar to Milton v. Long-Bell Lumber Co., 165 La. 336, 115 So. 582, which is relied upon by the putative wife, because in that case, though it is true that the separation had existed for only three or four months, still it had taken place as the result of "mutual consent." We understand that when the Supreme Court used that term it meant that the parties had agreed to disagree and that, in the future, they would go their separate ways. That is not the case here. The duration of the separation is unimportant where there is an agreement to separate and to discontinue the conjugal relationship. Where there is such an understanding and an actual physical separation has occurred, the status of dependent widow immediately ceases, and, in such case, should the husband be killed the day after the separation, the widow could not recover in compensation because she would have lost her status as a dependent wife or widow. On the other hand, where there is a separation from economic necessity, but the wife continues in the hope of a reunion on some happy day in the future and continues to receive support from the absent spouse, so long as the expectation that he will return is reasonable, just so long does she remain a dependent wife within the contemplation of the compensation laws of Louisiana. See Oliphant v. Louisiana Long Leaf Lumber Co., 7 La. App. 521; Books v. Keen & Woolf Oil Co. et al., 9 La. App. 288, 120 So. 99.

■ The fact that the legal wife was herself employed during intermittent periods does not deprive her of her right to compensation. It would be a hard rule indeed which would require a legal wife actually receiving support from her husband and living with him within the contemplation of the compensation statute to lose her rights merely because she, by her own efforts, has augmented the income of the family.

We next consider the rights, if any, of the putative wife, Hannah Anderson. We have found that she was in good faith when she married Fernandez and that, until the time of his death, she remained in ignorance of the fact that he was still the legal husband of another woman, though the fact that she remained in good faith would seem to be of no importance, for the Louisiana jurisprudence leads to the conclusion that, when such a question is presented, it will be held "that in a putative marriage, even where there is subsequent bad faith, the civil effects resulting from the marriage will continue until a judicial declaration annulling the marriage."

Tulane Law Review, vol. VI, page 306: "The Necessity for the Continuance of Good Faith in a Putative Marriage." See, however, Evans v. Eureka Grand Lodge, 149 So. 305, 306, in which the Court of Appeal for the Second Circuit said: "The law measurably protects the innocent party to a bigamous marriage so long as his or her good faith continues. It ceases this benign attitude the moment the innocent party becomes wise to the facts and does not avail himself or herself of the opportunity to prove good faith by disavowing a contract to the execution of which he or she has been induced by fraud and deception."

But, since we find that the good faith of the putative wife continued until the death of the husband, it is unnecessary that we approve either the view set forth in Tulane Law Review or that adopted by our brother of the Second Circuit.

The putative wife was, therefore, entitled to all the civil effects of her marriage with Fernandez, though that marriage was in fact a nullity. Civ. Code, art. 117. The question, then, is this: "Is there included among the civil effects of such a marriage the right to priority over, or even to equality with, the legal wife in claiming the workmen's compensation award resulting from the death of the husband?"

■ It has been definitely settled here and elsewhere that among the civil effects produced by a putative marriage is the right to claim compensation from the employer. Jones v. Powell Lumber Co., 156 La. 767, 101 So. 135. There the Supreme Court stated the question to be: " * * * Whether, as one of the civil effects of a putative marriage, under articles 117 and 118 of the Civil Code, a widow, who was in good faith when she married and until after her husband's death, is entitled to the compensation allowed to the widow of a deceased employee, under the Employers' Liability Act."

The answer to the question is given as follows: "Our answer to the question of the Court of Appeal is that the plaintiff in this case [the putative wife] is entitled to the compensation allowed to a widow, under the Employers' Liability Act."

But in that case there was no controversy between the putative wife and the legal wife. The legal wife had been divorced long before the accident from which the death of the employee resulted, and, therefore, the recognition of the rights of the putative wife did not have the effect of depriving the legal wife of

any portion of the compensation award because she was not entitled to it anyway, since, at the time of his death, she was neither married to nor dependent upon the deceased employee. The decision in the Jones Case resulted from the recognition of the paternalistic character of the workmen's compensation legislation and the consequent interpretation of that legislation "liberally in favor of the employee and his dependent relations" and strictly against the employer. The liberal construction of such statutes is favorably commented upon in Tulane Law Review, vol. VII, page 605.

■ But there is no reason to construe such statutes liberally in favor of one claimant and strictly against the other, where only the relative rights of the two competing claimants are involved.

Where the suit is one for damages and is brought under Civ. Code, art. 2315, the term "widow" has been strictly construed and is now held as not including a "putative widow." Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 So. 926. On the other hand, as we have already said, where it is a compensation statute which is being construed and the question is one which arises between the claimant and the employer only, it is equally well settled that the term "wife," or the term "widow," must be liberally construed as including a "putative wife" or a "putative widow."

■ We believe that there should be no liberal interpretation where the rights of the legal wife would be defeated or lessened thereby. On the contrary, there is every reason to protect the legal wife and to refuse to permit any one, unless with a clear and well-recognized right, to impinge upon the award to which she is entitled under the law.

In Jackson v. Swift & Co. (La. App.) 151 So. 816, is found a case which counsel for the putative wife finds analagous to the case at bar. There were two rival claimants, one a daughter by a former wife and another a woman who claimed to be the widow of the deceased employee by a putative marriage.

The court gave very careful consideration to the relative claims and finally rejected that of the woman who asserted her rights as the result of the putative marriage, holding that she, "being in bad faith, was neither the legal nor the putative wife." It is argued that the court must have felt that a putative wife is entitled to at least share with a legal wife, else it would not have found it necessary to find the so-called putative wife to be in bad

faith, but would have reached the result by a much shorter route, by merely holding that the putative wife could not recover as against the legal wife.

But counsel overlooks the fact that there the other claimant was not a legal wife, but was a dependent daughter of a former legal wife, and it may be that, as the result of the decision in Jones v. Powell Lumber Co., supra, where there is no legal wife the putative wife may claim, even though there be children of the former legal wife. It may also be that in the Jackson Case the court realized that the award would be greater in the event it should find a well founded claim in favor of the child and also a legal claim of the putative widow, and that, in this event, even assuming that the child should be given priority and should be entitled to 32½ per cent. of the weekly wages of the deceased employee, the total award, being 46¼ per cent., there would still be a small portion of the award to which the putative wife would be entitled, even if her rights should be subordinated to those of the legal child. For either of these reasons, it would have been necessary for the court, in the Jackson Case, to definitely pass upon the good or bad faith of the woman claiming as the putative wife.

In an effort to persuade us that the laws of this state permit the rights of a putative wife to impinge upon the rights of the legal wife, counsel for Hannah Anderson calls our attention to a thoroughly established and well-recognized doctrine, that where there is a putative wife and a lawful wife, and a distribution of the marital community becomes necessary, it is to be divided equally between the two. It is true that his rule is well established. Tulane Law Review, vol. 7, supra; Patton et al. v. Cities of Philadelphia & New Orleans, 1 La. Ann. 98; Waterhouse v. Star Land Co., Ltd., 139 La. 177, 71 So. 358; Johnson v. Johnson, 167 La. 861, 120 So. 479; Ray v. Knox, 164 La. 193, 113 So. 814.

But this rule results from the thought as expressed in Patton v. Cities of Philadelphia & New Orleans, supra, that in such situation the guilty husband "forfeits his share when he has two wives living," the result being "that one-half goes to each of the wives, and that the husband deceiving the second and doing a grievous wrong to the first, refuses unjustly to either the share which belongs to her; and that he is bound to satisfy both out of every thing he possesses, because the law favors those who are deceived against those who deceive them." The reasoning goes still further and brings about the result that

children of either marriage inherit from the guilty father no part of the community because no part of it belonged to him, since half belonged to each of his wives. And the court shows that, in enforcing this result, no punishment is visited upon the children, because there is nothing taken from them to which they are actually entitled for the reason that what is taken from the father's half of the community has never belonged to him, but has always belonged to the putative wife. The court said: "In taking from the father's succession those acquêts and gains, no wrong is done to the inheritance or the legitimate portion of his children, because this is a just debt which he owes to his two wives, and the thing which the father owes is not inherited by his children, but taken by his creditors, as their own."

But to permit a putative wife to share any portion of the compensation award, all of which would otherwise go to the legal wife, would not be to punish a guilty husband, nor would it take away anything from his heirs in order that it might be used "to pay a just debt," but it would be to take away from an innocent, dependent legal wife, who, by the faithlessness of her lawful husband, has already been grievously wronged, a portion of an award which the law contemplates she shall receive in full.

Finally, counsel contends that we should consider those cases involving life insurance or fraternal benefit insurance in which putative wives, or children of putative marriages, have been accorded rights. We find our attention directed to three cases decided by the courts of this state in which rights under insurance policies have been held to result from putative marriages: Smith v. Grand United Order, etc., 17 La. App. 532, 136 So. 124, Thompson v. Amos Lodge, 4 Orleans App. 217, and Evans v. Eureka Grand Lodge (La. App.) 149 So. 305. We also notice that in Tulane Law Review, vol. VII, supra, it is suggested that the tendency of the courts is to recognize putative wives and their heirs as being entitled to the rights of legal wives and of legal heirs in insurance contracts. But in none of the cases did the recognition of the right of the putative wife or of the child of the putative marriage deprive the legal wife of any portion of the proceeds to which she otherwise would have been entitled. In Smith v. Grand Lodge, supra, the legal wife who had been named originally as beneficiary in a policy of insurance issued on the life of her husband brought suit under the policy. Defendant fraternal order admitted that the policy had been issued, but asserted that the plaintiff had lost her rights as beneficiary because of the substitution of another person, and prayed that the other substituted beneficiary be cited as a party defendant. Without waiting for the substituted beneficiary to appear, the fraternal order permitted judgment to be rendered against it in favor of the original beneficiary, the legal wife. Later the substituted beneficiary, the putative wife, also brought suit against the fraternal order and the court, recognizing that as between an insurer and the beneficiary the term "wife" should be construed liberally as including a "putative wife," permitted her to recover.

But this case is not authority for the view that, had the controversy been between the two women, the rights of the putative wife would have been permitted to interfere in any way with the rights, if any, of the legal widow. The rights of the legal widow were lost, not because of the existence of a putative wife, but because some one else had been named as beneficiary in the policy. Carefully analyzed, the case is authority for the view that the rights of the legal widow were lost when her name was erased as beneficiary, and that, had the defendant in her suit seriously resisted, she would have been denied recovery, not because of the prior rights of a "putative widow," but because of the absolute right of a named beneficiary. The legal widow had no vested interest in the policy.

In Thompson v. Amos Lodge, supra, the legal wife had joined the husband "in an endeavor to secure a divorce, both employing and paying the same attorney." There could have been no recovery under the policy by the legal wife even if there had been no putative wife, because the legal wife was no longer a dependent of the insured, and the constitution of the fraternal order provided that only dependents might be permitted to recover. The court said: " * * * Had Thompson died without contracting a second marriage, but had been separated for years from his wife, who had joined him in seeking a divorce, the Order could have resisted the levy of the ten cents contribution on the ground that the member had died leaving no one dependent upon him."

In Evans v. Eureka Grand Lodge, supra, the court rejected the claim of a putative wife to the proceeds of the policy of fraternal insurance in which she had been named beneficiary. It was held that, although she had married in good faith and in complete ignorance of the prior marriage of her husband

with another woman, still, when she acquired knowledge of that previous marriage, she immediately lost her rights to the civil effects of her putative marriage. The court used language which is pointed to as indicating that, had the putative wife not acquired information of the former marriage, she would have remained in good faith and that her claim as beneficiary would have prevailed, and it is argued that this case is, therefore, authority for the view that the claim of a putative wife to the proceeds should deprive the legal wife of her rights. But this case, too, is authority only for the view that a putative wife may be named beneficiary and that, if she is named, the former beneficiary loses all rights as such. The legal wife in the Evans Case, had there been no discovery by the putative wife of the prior marriage, would, it is true, have lost her rights resulting from her having been named as beneficiary, but she would have lost her rights because she would have lost her status as beneficiary, and not because the putative wife, as such, would have acquired any greater right than the legal wife, because the beneficiary, whoever it may be—so long as it is some one who may be named beneficiary—primes all others in the right to the proceeds of the policy.

Where the rights of a legal wife are involved, a strict, rather than a liberal interpretation should be adopted, and when such is done, the terms "wife" and "widow" do not include the wife of a putative marriage. Vaughan v. Dalton-Lard Lumber Co., supra. See, also, Beebe v. Moormack Gulf Lines, Inc., 59 F.(2d) 319, in which the United States Circuit Court of Appeals for the Fifth Circuit said: "Putative wife of seaman who contracted second marriage in Louisiana, notwithstanding prior undissolved marriage and wife living, held not 'surviving widow' entitled to sue for death of seaman."

In United States v. Robinson, 40 F.(2d) 14, the same court held that a putative wife, under the law of this state, cannot be considered a "spouse" within the contemplation of the war risk insurance statutes of the United States.

We conclude that, unfortunate as it may be, where there can be only one award and that for a fixed amount, that award must go to the legal wife living with and dependent upon her husband, and that no part of it may be diverted to a putative wife.

The Fulton Bag & Cotton Mills should not be required to pay any part of the cost of this proceeding, since Act No. 123 of 1922, under which this proceeding is brought, relieves it of any liability therefor.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of Fulton Bag & Cotton Mills and against Hannah Anderson, dismissing the claim of the said Hannah Anderson; and it is further ordered, adjudged, and decreed that the compensation due by Fulton Bag & Cotton Mills be fixed at the sum of $3.12 per week, for a period of 300 weeks from August 6, 1934, and that there be judgment therefor in favor of Elsie Badelle Fernandez and against Fulton Bag & Cotton Mills; and it is further ordered, adjudged, and decreed that Elsie Badelle Fernandez be permitted to withdraw from the registry of the civil district court for the parish of Orleans the amount of compensation heretofore deposited by Fulton Bag & Cotton Mills.

All costs to be paid by Hannah Anderson.

Reversed.