### WOODARD v. MURPHY IRON & BOILER WORKS, Inc., et al.*

### SAME v. AMERICAN EMPLOYERS' INS. CO. et al.

### No. 16452.

Court of Appeal of Louisiana. Orleans.

Feb. 8, 1937.

Certiorari denied April 26, 1937.

Dart & Dart and Leo Dubourg, all of New Orleans, for appellant Mrs. Rosa Woodard.

Ernest J. Robin, of New Orleans, for appellant Eliza Gagnier.

Edward Rightor, of New Orleans, for appellees.

McCALEB, Judge.

On February 16, 1935, Robert Woodard, a negro employee of the Murphy Iron & Boiler Works, Inc., while engaged in painting a smokestack, lost his balance and fell from a height of approximately 30 feet, sustaining injuries which resulted in his death on March 9, 1935.

The deceased's widow, Eliza Gagnier Woodard, and his sister, Rosa Woodard, widow of Peter Graham, have filed separate suits against the Murphy Iron & Boiler Works, Inc., and the American Employers' Insurance Company, its insurer, claiming compensation under the Employer's Liability Act of this state (Act No. 20 of 1914, as amended).

The defendants filed answers to the suits admitting the employment of the deceased and that he died from injuries sustained in the course of his employment, but denied that either the decedent's widow or his sister are dependents within the meaning of the compensation law entitling them as such to the weekly payments granted under the statute.

The cases were consolidated for trial by consent of all parties, in avoidance of a multiplicity of suits, and the district judge, after hearing the evidence, dismissed the claims of both plaintiffs. They have separately appealed from the adverse judgments.

The questions presented for determination are: First, Was Eliza Gagnier Woodard, the widow of the deceased, living with the deceased at the time of his accident and death? Second, If she was not living with him at the time he was injured, was she actually dependent upon him for support? Third, If she was not living with him at the time of the accident and not dependent upon him for support, was his sister, Rosa Graham, legally and actually dependent in whole or in part upon him for support?

We shall discuss the foregoing questions in their respective orders for if the trial court was in error in dismissing the claim of the surviving widow, it follows that it was correct in dismissing the claim of the surviving sister under the provisions of section 8 of Act No. 20 of 1914, as amended by section 1 of Act No. 242 of 1928.

We find the facts of the case, respecting the claim of the surviving widow, to be as follows:

The deceased was married to Eliza Gagnier on November 24, 1908, and one child, Octave Woodard (a major at the time the cause of action herein arose), is the sole issue of their marriage. The spouses lived together until about ten years ago, when they separated, and for the last five or six years, prior to the time of the death of Robert Woodard, his wife made her home with her son, Octave Woodard, and his wife at 4116 South Claiborne avenue, New Orleans.

Eliza Woodard testified that the deceased visited her regularly, prior to his death, and that he gave her money each and every week for her support. She is corroborated in this statement by her son, Octave Woodard, one Arnold Phillips, and

one Henry Prophet (a negro living in the same house with plaintiff and her son). On the other hand, testimony has been adduced by Rosa Graham, the surviving sister of the deceased, and several other witnesses to the effect that Robert Woodard had nothing whatever to do with his wife because she was living in open adultery with Henry Prophet. This testimony respecting the unlawful relations between Eliza Woodard and Henry Prophet is most convincing. There was no evidence produced to show that the deceased, at any time during the last five or six years prior to his death, ever cohabited with his wife. The widow denies that any illicit relationship existed between Henry Prophet and herself. But the testimony of other witnesses that such unlawful cohabitation was notorious, when considered in connection with the admitted fact that Henry Prophet lived under the same roof with her for at least five years, amply justifies the conclusion that the charges against her are true.

Being of the opinion that the deceased and his widow were not living together at the time of his injury and subsequent death, we next consider the evidence tendered by her and her witnesses, who testified to the effect that she was actually dependent upon the deceased for support and that he did furnish her with money at regular intervals. The undisputed facts of the case show that for one year prior to Woodard's death, his only employment was with the Emergency Relief Administration of the United States; that his average earnings during that period were slightly less than $10 per month. He resided at 1906 Josephine street in the home of a colored man named James McAdory, who says that, at the time of the accident, the decedent owed him rent for nearly a year. The evidence of Oscar Woodard, deceased's brother, is to the effect that the deceased ate most of his meals at the witness' home and that during the year 1934 and part of the year 1935 the deceased was extremely hard pressed for funds. It is true that the deceased was working for the Emergency Relief Administration only one or two days per week and that he did obtain other jobs at intervals (such as the temporary employment with the Murphy Iron & Boiler Works, Inc.) which helped him financially. But even though his monthly earnings may be said to be in excess of $10 per month, it is not plausible to hold that he gave a portion of those earnings to his wife in view of the fact that she had been notoriously unfaithful to him for over five or six years and lived separate and apart from him during that period.

Counsel for Eliza Woodard tells us that this case cannot be distinguished from the case of Ross v. Armour Fertilizer Works, 168 So. 353, 355, recently decided by this court. In that matter, we allowed the widow compensation upon a showing that, while her husband was unfaithful to her, he did occasionally call to see her, gave her money, and cohabited with her. No question was presented there in respect to the unfaithfulness of the surviving widow. On the contrary, the evidence plainly exhibited that it was the husband who was unfaithful, and in allowing the widow to recover, we observed:

"It would be a very harsh ruling which would deprive a faithful wife of her status as a dependent widow nolens volens because of the protracted absence or infidelity of her husband."

But, here, it is the wife who is the transgressor, and in view of our finding that she was living in open adultery with Henry Prophet, it seems quite unlikely that the deceased, having knowledge of this fact, would contribute to her support and maintenance.

Being of the opinion that the district judge was correct in dismissing the claim of Eliza Woodard, we next consider the claim of Rosa Graham, the surviving sister of the deceased.

Rosa Graham is about sixty-eight years of age and lives in Baton Rouge, La., in a house which was owned by the deceased prior to his death. She contends that during a substantial period, prior to the accident, the deceased gave her about $6 a week for her support. Her testimony on this point is uncorroborated, but her brother, Oscar Woodard, Alex Foreman, a friend of the deceased, James and Leola McAdory (with whom the deceased resided), all say that the deceased told them that he was sending money to his sister in Baton Rouge. Her evidence (that the deceased sent her $6 per week) is not convincing and this especially so, when it is analyzed with other testimony given by her own witnesses revealing that the deceased was not earning over $10 per month, and was unable to pay his room rent during the last year of his life. We therefore hold that the district judge was cor-

rect in dismissing her claim that she was wholly dependent upon the deceased for support.

■ However, her counsel argues, in the alternative, that, even though we find that Rosa Graham was not wholly dependent upon the deceased for support, she was at least partially dependent upon him, inasmuch as the deceased allowed her to occupy a room in the house owned by him at Baton Rouge without the payment of rent. It is undoubtedly true that, prior to his death, the deceased placed the real estate owned by him at Baton Rouge in charge of his sister and that she acted as caretaker of those premises. The premises consist of a double house, both sides of which are rented excepting a portion occupied by Rosa Graham. While the testimony is not explicit, respecting the exact arrangement between Rosa Graham and the deceased, we gather that she was placed in charge of the premises to collect the rents and care for the property in general. She made the monthly payments due to the homestead holding the mortgage on the property and if there was anything left, after making these payments, she would either keep the same for her personal support or send it to the deceased.

It is argued that the foregoing arrangement constitutes at least a partial dependency. But, the question immediately arises respecting this contention, whether the claimant was partially dependent on the earnings of the deceased for her support. Subsection 2 of section 8 of Act No. 20 of 1914, as amended, reads in part:

"If the employee leaves legal dependents only partially actually dependent *upon his earnings for support at the time of the accident and death,* the weekly compensation to be paid * * * shall be" (Italics ours.)

Can the foregoing provision be interpreted to mean that, because the deceased allowed his sister to become the caretaker of real estate owned by him and gave her free rent in consideration of her attending to his property, she was partially actually dependent upon his earnings for support at the time of his death? We think not. The Supreme Court said, in the recent case of Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, 188:

"The main object of the Legislators in enacting the Employer's Liability Act was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work."

Likewise, the sections of the statute, providing for portions of an employee's earnings to be paid to legal dependents in the event of his death, specifically contemplate only those persons who, because of their relationship to the deceased, were actually dependent upon his earnings.

But here, the deceased's sister was not dependent upon his earnings at the time of his death. More properly, she was dependent upon real estate owned by him to assist her in maintaining herself and we have considerable doubt that the arrangement had between the deceased and herself can be regarded as a dependency in any view of the case. It is more plausible to observe that she was employed by the deceased as caretaker of his real estate, in consideration of which she was granted the privilege of living on the premises without charge.

A fair and just consideration of all of the evidence in this case warrants the conclusion that Robert Woodard, at the time of the unfortunate accident which resulted in his death, was not survived by any person actually and legally dependent upon his earnings for their support. This was the finding of the district judge, and we concur in his view.

For the reasons assigned, the judgments appealed from are affirmed.

Affirmed.

JANVIER, J., absent, takes no part.