Lucille Norman, alleging herself to be the widow of Robert Carter, brought this suit against A. Marx Sons, Inc., and Central Surety Insurance Company, its insurer, claiming compensation for 300 weeks for the death of Robert Carter.
Calener Williams intervened also claiming to be the widow of Carter and asked that compensation be awarded her and denied to Lucille Norman.
A. Marx Sons, Inc., and the Central Surety Insurance Company filed a joint answer in which they admitted that Robert Carter had been employed by A. Marx Sons, Inc., and had died in the course of and from an accident growing out of his employment. They denied that Lucille Norman was the widow of Carter and averred that her marriage to Carter was bigamous and of no legal effect because Carter was, at the time, incapable of contracting *Page 419 
marriage since he had a living wife from whom he was not divorced. In answer to the petition of intervention of Calener Williams, the defendants admitted the marriage between Robert Carter and intervenor and averred that she was not living with him or dependent upon him at the time of his death.
There was judgment below in favor of Calener Williams awarding her $3 per week for 300 weeks and dismissing the suit of Lucille Norman. Lucille Norman and the defendants have appealed.
The judgment appealed from is fully sustained by the record as made up below. It appears that Robert Carter lived with several women and married two of them, the first marriage being that to Calener Williams which occurred on the 23d day of January, 1925, and the second to Lucille Norman on the 29th day of January, 1940. He contributed something to the support of both women out of his more or less meagre pay. Lucille Norman knew of his former marriage and was, therefore, in bad faith. Appellants, however, complain of what they declare to have been the improper conduct of the trial judge in refusing to permit rebuttal testimony. They say in their argument and briefs that the court, after having heard the plaintiff's case in chief and the intervenor's evidence, declined to permit either of them to offer any evidence to controvert intervenor's testimony. Plaintiff is much more insistent upon this contention than the defendants but, nevertheless, both the plaintiff and the defendants complain in oral argument and in their briefs that they were deprived of substantial rights by the trial court. Article 477 of the Code of Practice is to the effect that "when the plaintiff has closed his evidence, the defendant shall bring his witnesses, and produce the proof in support of his defense; the plaintiff may then bring additional witnesses, or his former witnesses, to rebut the testimony adduced by the defendant, or to lessen the weight of such testimony". Stone et al. v. Carter, 5 La. 448; Bernard v. Guidry, 109 La. 451, 33 So. 558; Black, Rogers Co. v. West Monroe Insurance Agency, La.App., 153 So. 601.
There is, however, nothing in the record to show that there was any attempt to offer any rebuttal testimony. The record does show that the trial judge, at the conclusion of the intervenor's evidence, declared, "I have heard enough of this. I will decide it in the morning".
The negro, like some individuals of more fortunate races, has never understood the importance of marriage or its obligations. He regards the marriage certificate as an unnecessary and frivolous expense. The sorry sordid saga of Carter's life and loves was well calculated to disturb the judicial calm, and, when we read in the record the expression of our brother below, "I have heard enough of this. I will decide it in the morning," it is with a sympathetic understanding, for, when we had reached this point in the record, we, ourselves, had read enough; enough to enable us to conclude that the issue had been properly determined below. This, we are sure, is what was meant. Judge Moise had heard enough to know how to decide the case and if, as counsel strenuously insists, there was a note of irritation in his voice, it was, as we have suggested, quite pardonable. There had been an abundance of testimony; the two marriages had been proven; that of Calener Williams was unquestionably prior to that of Lucille Norman; the dependency of Calener and the bad faith of Lucille was established. Certainly, there was enough testimony, if not discredited, to decide the issues involved and, if counsel had or could have produced impeaching evidence, he made no effort to present it. The fault, if fault there be, lies entirely with counsel. There are legal situations, as well as other occasions in life, when one must speak out, or "forever after hold his peace", and this was one of those occasions. The silence of counsel amounted to an acquiescence in the conclusion of the court to the effect that sufficient testimony had been adduced, and it will not do for counsel now to say that he had no opportunity to present his case. We do not believe that we should remand this case to admit evidence, which, if it exists and has the probative value contended for, should have been presented when the case was originally tried.
John H. Staub, the bookkeeper of Carter's employer, testified that the deceased earned 30 cents per hour on a basis of a 42 hour week or $12.60 per week, and counsel for Calener Williams complains that his client should receive 32 1/2 per cent of $12.60, the weekly wage of deceased or $4.09 per week for 300 weeks instead of the minimum of $3 per week as allowed below.
Under subsection 2 of paragraph (E) of Section 8 of the Workmen's Compensation Act, No. 20 of 1914, as amended, Dart's *Page 420 
Statutes, Section 4398, page 341, it is provided:
"Payment to such dependents shall be computed and divided among them on the following basis.
"1. If the widow or widower alone, thirty-two and one-half per centum of wages."
In Fulton Bag Cotton Mills v. Fernandez, La.App., 159 So. 339, 342, it was said: "The fact that the legal wife was herself employed during intermittent periods does not deprive her of her right to compensation. It would be a hard rule indeed which would require a legal wife actually receiving support from her husband and living with him within the contemplation of the compensation statute to lose her rights merely because she, by her own efforts, has augmented the income of the family".
Calener Williams is, therefore, entitled to receive $4.09 per week for 300 weeks. The fact that she worked at odd times is of no importance since the record shows she was wholly dependent upon deceased.
For the reasons assigned, the judgment appealed from is amended by increasing the amount awarded intervenor from $3 to $4.09 per week for 300 weeks and, as thus amended, it is affirmed.
Amended and affirmed.